**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Brejonique Walters,<br><br>    Defendant | Case No.: 2:16-cr-00011-JAD-PAL<br><br>**Order Denying Emergency Motion for Compassionate Release**<br><br>[ECF No. 57] |

Defendant Brejonique Walters moves for an early release from her 8-month term of imprisonment for supervised-release violations, arguing that her chronic asthma condition, combined with her incarceration at the Nevada Southern Detention Center, "places her at high-risk for COVID-19 infection."[1] The government opposes the motion, responding that Walters has not identified extraordinary and compelling reasons for relief and, regardless, her criminal history and personal characteristics demonstrate that she is a danger to the public if released early. I deny the motion because I do not find that compassionate release is warranted.[2]

**Background**

In 2016, Walters pled guilty to possession of methamphetamine[3] with intent to distribute it and being a felon in possession of a firearm.[4] She was sentenced to thirty months in prison followed by three years of supervised release.[5] Although she was initially on pretrial release

---

[1] ECF No. 57 at 11.

[2] Because the government does not assert that Walters's failure to exhaust the BOP's administrative process before bringing this motion prevents me from considering it, *see* ECF No. 58 at 5, I assume that exhaustion is not a barrier and I address the merits of Walters's request.

[3] 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

[4] 18 U.S.C. § 922(g)(1) and 924(a)(2). ECF No. 28 (plea agreement).

[5] ECF No. 33.

during that prosecution, her release was revoked and she was detained after she absconded from supervision.[6] After serving her term in prison, Walters began her term of supervised release in May 2018. Within a few months, she was associating with convicted felons, using marijuana, and arrested for possession of a stolen credit card.[7] Walters pled guilty to the credit-card offense—a felony—in state court and admitted to violating four conditions of her supervised release before this court.[8] I sentenced her to a low-end, eight-month sentence followed by twenty-eight months of supervised release.[9] She began serving that eight-month sentence less than two months ago on April 17, 2020.[10]

28-year-old Walters is housed at Core Civic's Nevada Southern Detention Center (NSDC) and has not yet been transferred to the Bureau of Prisons.[11] In a counseled motion, she asks for compassionate release because (1) she is an African-American woman who suffers from chronic asthma, which she contends is a medical condition that places her at high-risk for COVID-19 infection"; (2) she claims she poses a minimal risk to public safety; and (3) she believes the 18 US.C. § 3553(a) factors support her release.[12] The government opposes the request. It argues that the NSDC has sufficient COVID-19 protocols in place to address Walters's medical concerns, that the incidence of the virus at NSDC is insignificant, and that

---

[6] ECF No. 23 (order of detention).

[7] ECF No. 35 (petition for warrant).

[8] ECF No. 56 (revocation judgment). Though she admitted her violations in this court on January 13, 2020, at that time she was on a writ from state custody. She completed her state sentence and began serving her federal time on April 17, 2020, and defense counsel projects her release date at approximately December 17, 2020. ECF No. 57 at 2–3.

[9] *Id*.

[10] *Id*.

[11] ECF No. 57.

[12] *Id*.

2

asthma is not an extraordinary and compelling reason for release.  At a minimum, it contends, Walters's extensive criminal history, which includes prior convictions for violent and firearm offenses and a demonstrated inability to comply with release conditions, makes her a terrible candidate for this exceptional relief.[13]  In reply, Walters argues that the government overstates the nature of her criminal history and highlights that she went nearly six months on supervised release without a violation.[14]

## Discussion

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[15]  The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[16] is an exception to this limitation.  It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[17]  The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable."[18]  Any sentence reduction also must be "consistent with applicable policy statements issued by the Sentencing Commission,"[19] including the requirement that the defendant "is not a danger to the safety of any other person or to the community."[20]

---

[13] ECF No. 58.

[14] ECF No. 59.

[15] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[16] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[17] 18 U.S.C. § 3582(c)(1)(A)(i).

[18] *Id*.

[19] *Id*.

[20] U.S.S.G. § 1B1.13(2).

I deny Walters's motion on its merits because she has not demonstrated that compassionate release is warranted. Walters's reasons for seeking release are neither extraordinary nor compelling. Although the COVID-19 pandemic is undeniably grave and its effect on every aspect of American life is unprecedented, its impact at NSDC has been minimal. In Walters's reply, "undersigned counsel" reports having learned that "at least two detainees" have tested positive at the facility,[21] and at least one of whom has recovered.[22] As the government points out, however, NSDC has protocols in place, including screening and quarantining, to combat COVID-19, and those protocols appear to be working based on the low number of reported cases at this facility.[23] And although asthma was originally identified as a risk factor for COVID-19, more recent studies have retreated from that conclusion.[24] Asthma is also not the type of serious medical condition that the Sentencing Commission has deemed worthy of compassionate release.[25]

But even if having asthma in prison during a pandemic qualifies as an extraordinary and compelling reason for compassionate release, the applicable § 3553(a) factors do not justify a

---

[21] ECF No. 59 at 7.

[22] ECF No. 59 at 7.

[23] ECF No. 58 at 6–7.

[24] *See* Hakim, Danny, *Asthma Is Absent Among Top Covid-19 Risk Factors, Early Data Shows*, New York Times, Apr. 16, 2020, https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html. An article posted on the American Academy of Allergy, Asthma & Immunology website and entitled "COVID-19 and Asthma: What Patients Need to Know" notes, "It is important to know that currently there is no evidence of increased infection rates in those with asthma." https://www.aaaai.org/conditions-and-treatments/library/asthma-library/covid-asthma.

[25] *See* U.S.S.G. § 1B1.13, application note 1(A). The Sentencing Commission finds extraordinary and compelling reasons under the medical-condition category when the defendant has (1) a terminal illness or (2) a physical, mental, functional, or cognitive impairment "that substantially diminishes" her ability "to provide self-care within the environment of a correctional facility and from which . . . she is not expected to recover." *Id*.

sentence reduction for Walters. Her robust criminal history began at age 12 and included violent felony convictions for conspiracy to commit kidnapping and attempted robbery by the time she was 17.[26] The offenses that brought her to federal court were possession of methamphetamine with intent to sell and being a felon in possession of a loaded semiautomatic handgun—serious and dangerous offenses.[27]

Walters's past performance on supervision demonstrates either an inability or unwillingness to comply with supervision terms. Her record reflects probation and parole violations.[28] Pretrial release in her underlying case was revoked because she absconded from supervision and was deemed a risk of non-appearance.[29] And the reason she is currently incarcerated is that she violated her supervised release terms—including picking up a new felony offense just months into her three-year term of supervision. Though Walters tries to highlight that she was compliant for a "6-month period," and I certainly credit her for that, her violations were numerous and significant and they suggest that she was absconding from supervision yet again.[30] Nevertheless, and though the U.S. Probation Office was advocating for a high-end, 14-month sentence for those violations, I gave her a more lenient, low-end sentence of 8 months.

I don't overlook the positive information for Walters on the other end of the § 3553(a) spectrum. She notes that she has a supportive family that will financially support her until she can find a job, and they will provide her a place to live and self-quarantine upon release.[31] But

---

[26] Presentence Report ("PSR") at 7–10.
[27] ECF No. 1 (indictment).
[28] PSR at 7–8.
[29] ECF Nos. 23 (order of detention); 24 (minutes of revocation hearing).
[30] ECF No. 35 (petition).
[31] ECF No. 57 at 23.

5

she had the same supportive family when she absconded from her mother's home just months ago while on supervised release, and Walters's poor performance on past supervision terms leaves me highly skeptical of her likelihood of compliance this time around and her likelihood of quarantining.

In sum, the nature and circumstances of the offenses on which Walters is currently incarcerated; her history and characteristics; the need for her sentence to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public from further crimes; and the kinds of sentences available all weigh against releasing her after serving just two months of her eight-month sentence. And with this well-documented history, I cannot conclude that Walters would not be a danger to the community if released early.

**Conclusion**

IT IS THEREFORE ORDERED that Defendant Brejonique Walters's Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582(c)(1)(A)(i) and Authorizing Any Remaining Portion of Her Sentence to be Served on Home Confinement **[ECF No. 57] is DENIED.**

Dated: June 11, 2020

_____
U.S. District Judge Jennifer A. Dorsey